IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXIS BEVAN,                                    CIVIL DIVISION

            Plaintiff,                         Case No. 2:23-cv-277

       v.

EBY-BROWN COMPANY, LLC,

            Defendant.

## COMPLAINT AND JURY DEMAND

A.    ***Preliminary Statement***

1.    The plaintiff Alexis Bevan brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination based upon her sexual orientation.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.    ***Jurisdiction***

2.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.    On or about December 7, 2022, the plaintiff timely filed a charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2023-00579.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.    The EEOC issued a Notice of Right to Sue on January 27, 2023.

5.    This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.    ***The parties***

6.    The plaintiff Alexis Bevan is an adult individual who resides West Mifflin, PA (Allegheny County).

7.    The defendant Eby-Brown Company, LLC ("Eby-Brown" or "the company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 920 Irwin Run Road, PA 15122 (Allegheny County).

8.    At all times material, the defendant employed more than fifteen employees.

9.    The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.    ***Factual Background***

10.    The plaintiff was employed by Eby-Brown, from September 27, 2015, through October 31, 2022, at which time the company terminated her employment. At the time of her discharge, her job title was Third Shift Manager.

11.    The plaintiff's duties as Third Shift Manager included managing employees on the third shift and ensuring that customer orders and production orders were being fulfilled each day.

12.    At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.

13.    The plaintiff reported to Brian Rock, the Production Manager/Vice President of Operations.  Katie Fredrick was the Human Resources Manager.

14.    Eby-Brown has a policy regarding relationships in the workplace:

**CONFLICTS OF INTEREST**

…

Personal or romantic involvement with a competitor, supplier, or subordinate associate creates an actual or potential conflict of interest. An associate involved in any of the situations described above should immediately disclose the relevant circumstances to his or her supervisor or to the Human resources Department for a determination as to whether an actual or potential conflict exists.

15.    The policy regarding workplace relationships was unevenly enforced, was often used as a tool by management to pry into the personal lives of the employees and was an issue that sparked a lot of gossip and rumors among the employees and management.

16.    The plaintiff is an openly gay female. Rock and others in management were aware of the plaintiff's sexual orientation. In addition, many of the plaintiff's co-workers were also aware of the plaintiff's sexual orientation.

17.    In April 2022, the plaintiff met Mackenzie Savage, Quality Control. Savage reported to the plaintiff. The plaintiff and Savage were attracted to each other and soon started a romantic relationship.

18.    The plaintiff told Rock about her interest in and relationship with Savage from the very beginning. Rock encouraged the plaintiff to date Savage, communicating things like, "I like Mackenzie [Savage]; she's cute and you're cute. Now I'll have both you and her to stare at on the third shift." When the plaintiff would talk to Rock about whether she should date an employee, Rock told her to "go for it"; she had a "golden opportunity" and that she should pursue her interest.

19.    Rock tended to encourage relationships between women more so than heterosexual relationships. The plaintiff perceived that Rock thought same sex relationships between women were "hot".

20.    The plaintiff continued to be open with Rock regarding the developing relationship with Savage and told him that they were going to be going on their first date on May 5, 2022.

21.    After that date, the plaintiff approached Rock in person about her relationship with Savage.  She told him, "Look, I want you to hear this from me before you hear it from anyone else:  Mackenzie [Savage] and I are hanging out a lot and I guess you can say that we are currently dating."

22.    Rock seemed happy to hear the news but cautioned the plaintiff "to keep it on the low" so neither the plaintiff nor Savage would have to change their working shifts.  He was not concerned with any "conflict of interest" posed by the relationship, even though the plaintiff was Savage's manager and handled issues relating to Savage's payroll.  He also advised the plaintiff to be careful when taking breaks with Savage because they could be seen doing so by other employees (who may come to the conclusion that they were dating) and/or seen on one of the many security cameras in and around the facility.

23.    Others in management were aware that the plaintiff and Savage were dating.  For example, the plaintiff had communications with Craig Dangelo, Second Shift Warehouse Manager, about her relationship with Savage and told him that she wanted to post photographs on her Facebook of the two of them together.  Dangelo responded, *Fucken do it!*  The plaintiff said that she was reluctant to do so because Rock had told her to be careful because either the plaintiff or Savage would have to change their work shifts if the "news got out."

24.    The plaintiff did not go out of her way to hide her relationship with Savage.  She understood that management could decide to make adjustments to working schedules as a result of their relationship.  The plaintiff did not have a problem with being moved to a different shift, if necessary, and, to the plaintiff's knowledge, Savage felt the same way.

25.     Unfortunately, on October 7, 2022, the plaintiff's relationship with Savage ended badly.  Savage falsely accused the plaintiff of physical abuse and, on October 8, 2022, secured a protection from abuse order ("PFA") against the plaintiff.

26.     Shortly after the PFA was filed, the plaintiff called Rock and told him that she would need a couple of days off work to deal with the PFA.  She told him that she would keep Rock advised.

27.     The plaintiff suspected that Savage would contact HR and/or management to complain about the plaintiff so she decided to address it directly by telling Fredrick what had happened and that the incident leading to the PFA did not occur at work.  She also wanted to talk to Fredrick about the situation so that HR could make a decision whether they should continue to work on the same shift.  On October 10, 2022, the plaintiff went to Frederick's office first thing in the morning.

28.     The first thing the plaintiff told Fredrick was, "I'm sure you're aware that Mackenzie [Savage] and I are dating."  Fredrick did not admit or deny that statement.  During their ensuring conversation, the plaintiff told Fredrick that she had disclosed the relationship to Rock.  Fredrick responded, "Oh, okay."

29.     The plaintiff told Fredrick that she would need to take a couple of days off of work.  Fredrick told the plaintiff that she received an email from Savage and she proceeded to read it to herself while the plaintiff was in the room.  As she was reading it, Fredrick said, "you know, it's funny that when something arises in a personal relationship, things are brought to light for the first time."  Fredrick explained, "If Mackenzie [Savage] had all these problems [apparently referring to what Savage had written in the email] with you for so long, why didn't

she report it at the time instead of bringing it all up now?"  Fredrick seemed to think that Savage's complaints were less credible as a result.

30.     On October 11, 2022, the plaintiff again met with Fredrick in person.  She told Fredrick that the PFA hearing was scheduled for October 25, 2022.

31.     At some point between October 16 and 21, Fredrick told the plaintiff that Savage was offered a shift change and that she refused it.  The plaintiff was struck by the fact that Fredrick had not asked her whether she was willing to change her own shift (which she was willing to do).  Fredrick also said that she would need to "grab some statements" from the plaintiff and others.

32.     On or about October 20 or 21, the plaintiff was asked to provide a statement through email.  She was told that HR wanted information about her relationship with Savage and, among other things, whether any fights had occurred at work.  Based upon information and belief, at least four other managers were asked to provide statements.

33.     The PFA hearing was held on October 25, 2022, as scheduled, and the PFA was lifted.  The plaintiff and Savage agreed to a "no contact order."  The plaintiff provided the paperwork to Fredrick on October 27, 2022.

34.     Around this time, Jason Stuckert, Third Shift Assistant Manager, told the plaintiff that he had talked to Fredrick about the situation.  He told the plaintiff that he told Fredrick that this was all upper management's fault because they were aware of the relationship and chose to do nothing.

35.     After the plaintiff provided her statement, she was not contacted by HR for a follow up interview and was not asked for any additional information.

36.     On October 31, 2022, the plaintiff received a text message from Fredrick, *Hi Lex,*
*are you able to come in at 230 today to have a follow up conversation?*

37.     The plaintiff went to Fredrick's office at the appointed time.   Present were
Fredrick and Brian McGinty, General Manager.   McGinty started the meeting off by asking why
the plaintiff did not have a Halloween costume on (he was wearing an eye-patch).   Pointing to
his eye-patch, he said, "I'm the terminator" (apparently referencing the movie starring Arnold
Schwarzenegger).   That attempt at humor did not sit well with the plaintiff, and she immediately
knew what was coming.

38.     Fredrick told the plaintiff, "Well, Alexis, based on the investigation, we have
decided to end your employment."   The plaintiff started to cry.   She said, "But, I reported the
relationship to my manager."   McGinty responded, "That is also being dealt with.   In the next
month or so there will be a lot of changes in management here."

39.     The plaintiff was provided with a Separation Notice.   In section 2, "Explain Facts
In Detail" it read, *After further investigation regarding the relationship between you (Alexis
Bevan) and 3rd shift employee (Mackenzie Savage) the decision was made to end your
employment due to violating company policy.*

40.     The reason given by Eby-Brown for the plaintiff's termination was a pretext and
the real reason that the plaintiff was terminated was on account of her sexual orientation.   First,
the plaintiff did not violate company policy because she told Rock about their relationship, as
required.   Further, the plaintiff told others in management about her relationship and, upper
management was made aware of their relationship.    Second. similarly situated heterosexual
couples were not terminated for failing to disclose their relationships as required by company

policy. Third, the plaintiff was never given an opportunity to change her shift to avoid any potential conflict of interest, something that she was willing to do.

## FIRST CAUSE OF ACTION

41.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

42.     The plaintiff is protected against discrimination on the basis of her sexual orientation under Title VII.

43.     The plaintiff was qualified for her position.

44.     Despite her qualifications, the plaintiff was discharged.

45.     The defendant's discharge of the plaintiff were in violation of Title VII because it was based upon her sexual orientation.

46.     The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

47.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

48.     As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

49.     The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated:  February 22, 2023